## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

**SUDDATH VAN LINES, INC., DARYL FLOOD
RELOCATION, INC., CITY/SUDDATH
RELOCATION SYSTEMS, LLC, SUDDATH
RELOCATION SYSTEMS OF CHARLOTTE, LLC,
WITHERS/SUDDATH RELOCATION SYSTEMS,
INC., SUDDATH RELOCATION SYSTEMS OF
TEXAS, INC., SUDDATH RELOCATION SYSTEMS
OF OREGON, LLC, SUDDATH RELOCATION
SYSTEMS OF ATLANTA, INC., SUDDATH
RELOCATION SYSTEMS OF JACKSONVILLE,
INC., SUDDATH RELOCATION SYSTEMS OF
ORLANDO, INC., SUDDATH RELOCATION
SYSTEMS OF MINNESOTA, LLC, SUDDATH
RELOCATION SYSTEMS OF MELBOURNE, INC.,
SUDDATH RELOCATION SYSTEMS OF
NORTHERN CALIFORNIA,  INC., SUDDATH
RELOCATION SYSTEMS OF CALIFORNIA,  INC.,
SUDDATH RELOCATION SYSTEMS OF ST.
PETERSBURG, INC., SUDDATH RELOCATION
SYSTEMS OF PENSACOLA, INC., SUDDATH
RELOCATION SYSTEMS OF FT. LAUDERDALE,
INC., and THE SUDDATH COMPANIES,**

      **Plaintiffs,**

**v.**                                                                 **Case No.**

**MAYFLOWER TRANSIT, LLC, UNITED VAN LINES,
LLC, and UNIGROUP, C.A.,**

      **Defendants.**                                **Plaintiff requests trial by jury:**

                                       ☒ **Yes**      ☐ **No**

## CIVIL COMPLAINT

Plaintiffs, Suddath Van Lines, Inc., a Florida corporation ("**Suddath Van Lines**"), Daryl Flood Relocation, Inc., a Texas corporation ("**Daryl**"), City/Suddath Relocation Systems, LLC, a Washington limited liability company ("**City**"), Suddath Relocation Systems of Charlotte, LLC, a North Carolina limited liability company ("**Suddath Systems Charlotte**"), Withers/Suddath Relocation Systems, Inc., a Florida corporation ("**Withers**"), Suddath Relocation Systems of Texas, Inc., a Texas corporation ("**Suddath Systems Texas**"), Suddath Relocation Systems of Oregon, LLC, an Oregon limited liability company ("**Suddath Systems Oregon**"), Suddath Relocation Systems of Atlanta, Inc., a Florida corporation ("**Suddath Systems Atlanta**"), Suddath Relocation Systems of Jacksonville, Inc., a Florida corporation ("**Suddath Systems Jacksonville**"), Suddath Relocation Systems of Orlando, Inc., a Florida corporation ("**Suddath Systems Orlando**"), Suddath Relocation Systems of Minnesota, LLC, a Minnesota limited liability company ("**Suddath Systems Minnesota**"), Suddath Relocation Systems of Melbourne, Inc., a Florida corporation ("**Suddath Systems Melbourne**"), Suddath Relocation Systems of Northern California, Inc., a California corporation ("**Suddath Systems N. California**"), Suddath Relocation Systems of California, Inc., a California corporation ("**Suddath Systems California**"), Suddath Relocation Systems of St. Petersburg, Inc., a Florida corporation ("**Suddath Systems St. Petersburg**"), Suddath Relocation Systems of Pensacola, Inc., a Georgia corporation ("**Suddath Systems Pensacola**"), Suddath Relocation Systems of Ft. Lauderdale, Inc., a Florida corporation ("**Suddath Systems Ft. Lauderdale**") (Suddath Van Lines, Daryl, City, Suddath Systems Charlotte, Withers, Suddath Systems Texas, Suddath Systems Oregon, Suddath Systems Atlanta, Suddath Systems Jacksonville, Suddath Systems Orlando, Suddath Systems Minnesota, Suddath Systems Melbourne, Suddath Systems N. California, Suddath Systems California, Suddath

Systems St. Petersburg, Suddath Systems Pensacola, and Suddath Systems Ft. Lauderdale collectively, "**Suddath**"), and The Suddath Companies, a Florida corporation ("**SudCo**") (Suddath and SudCo collectively, "**Plaintiffs**"), file this lawsuit against Defendants, Mayflower Transit, LLC, a Missouri limited liability company ("**Mayflower**"), United Van Lines, LLC, a Missouri limited liability company ("**United**"), and UniGroup, C.A., a Missouri cooperative association ("**UniGroup**") (Mayflower, United, and UniGroup collectively, "**Defendants**") and allege:

## INTRODUCTION

1.      Plaintiffs and Defendants operate (or operated at all times relevant to this lawsuit) in the residential and commercial moving and storage industry. Suddath, which was previously an agent for United, exercised its rights to terminate its agreements and relationship with Defendants; however, since that time, Defendants, including by and through UniGroup's gross mismanagement, have breached the parties' agreements and taken positions contrary to the governing agreements, giving rise to this lawsuit. Plaintiffs seek an award of money damages against the Defendants and a declaratory judgment interpreting the parties' rights under their governing agreements.

## PARTIES

2.      Plaintiff, Suddath Van Lines, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

3.      Plaintiff, Daryl, is a Texas corporation duly organized under the laws of the State of Texas which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

4.      Plaintiff, City, is a Washington limited liability company duly organized under the laws of the State of Washington which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207. Plaintiff, City, is ultimately wholly owned by Plaintiff, SudCo, and none of Plaintiff, City's members are citizens of the State of Missouri.

5.      Plaintiff, Suddath Systems Charlotte, is a North Carolina limited liability company duly organized under the laws of the State of North Carolina which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207. Plaintiff, Suddath Systems Charlotte, is ultimately wholly owned by Plaintiff, SudCo, and none of Plaintiff, Suddath Systems Charlotte's members are citizens of the State of Missouri.

6.      Plaintiff, Withers, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

7.      Plaintiff, Suddath Systems Texas, is a Texas corporation duly organized under the laws of the State of Texas which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

8.      Plaintiff, Suddath Systems Oregon, is an Oregon limited liability company duly organized under the laws of the State of Oregon which maintains its principal place of business at 9611 NE Sunderland, Portland, Oregon 97211. Plaintiff, Suddath Systems Oregon, is ultimately wholly owned by Plaintiff, SudCo, and none of Plaintiff, Suddath Systems Oregon's members are citizens of the State of Missouri.

9.      Plaintiff, Suddath Systems Atlanta, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

10.     Plaintiff, Suddath Systems Jacksonville, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

11.     Plaintiff, Suddath Systems Orlando, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

12.     Plaintiff, Suddath Systems Minnesota, is a Minnesota limited liability company duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207. Plaintiff, Suddath Systems Minnesota, is ultimately wholly owned by Plaintiff, SudCo, and none of Plaintiff, Suddath Systems Minnesota's members are citizens of the State of Missouri.

13.     Plaintiff, Suddath Systems Melbourne, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

14.     Plaintiff, Suddath Systems N. California, is a California corporation duly organized under the laws of the State of California which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

15.     Plaintiff, Suddath Systems California, is a California corporation duly organized under the laws of the State of California which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

16.     Plaintiff, Suddath Systems St. Petersburg, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

17.     Plaintiff, Suddath Systems Pensacola, is a Georgia corporation duly organized under the laws of Georgia which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

18.     Plaintiff, Suddath Systems Ft. Lauderdale, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207.

19.     Plaintiff, SudCo, is a Florida corporation duly organized under the laws of the State of Florida which maintains its principal place of business at 815 South Main Street, Jacksonville, Florida 32207. SudCo is the ultimate parent and sole owner of Suddath.

20.     Defendant, Mayflower, is a Missouri limited liability company duly organized under the laws of the State of Missouri which maintains its principal place of business at 1 Premier Drive, Fenton, Missouri, 63026. Defendant, Mayflower, is wholly owned by Defendant, UniGroup, and thus its sole member is a citizen of the State of Missouri.

21.     Defendant, United, is a Missouri limited liability company duly organized under the laws of the State of Missouri which maintains its principal place of business at 1 Premier Drive, Fenton, Missouri, 63026. Defendant, United, is wholly owned by Defendant, UniGroup, and thus its sole member is a citizen of the State of Missouri.

22.     Defendant, UniGroup, is a Missouri cooperative association duly organized under the laws of the State of Missouri which maintains its principal place of business at 1 Premier Drive, Fenton, Missouri, 63026. Defendant, UniGroup, is the parent and sole owner of Defendants, Mayflower and United.

## JURISDICTION AND VENUE

23.     Defendants are subject to the personal jurisdiction of this Court pursuant to, *inter alia*, Section 5(N) of that certain Agency Agreement dated January 23, 2015 between Suddath Van Lines and United ("This Agreement shall be interpreted in accordance with the laws of the State of Missouri" and "Carrier and Agent [Suddath] agree that . . . the United States District Court for the Eastern District of Missouri shall be the exclusive forum for the resolution of any dispute arising from or under this Agreement."; "Carrier" defined as Defendant, United, as well as "its parent corporation and any corporation or entity which is or may be under the common ownership or control of either of them, including subsidiaries or affiliates or their respective successors and assigns" (Agency Agreement at Section 1(A)), which would include Defendants, Mayflower and UniGroup); *see also* Section 5(N) of that certain Agency Agreement dated February 24, 2011 between Suddath Relocation Systems of Wisconsin, LLC d/b/a Boulevard Moving & Storage[1] and Mayflower. Further, Section 3(i) of the Second Amendment to Agency Agreement and Official Recognition of Strategic Relationship, provides that "the United States District Court for the Eastern District of Missouri shall be the exclusive forum for the resolution of any dispute arising from or under Section 3 of the [Second Amendment to Agency Agreement and Official Recognition of Strategic Relationship]." Additionally, Defendants are personally subject to the jurisdiction of this Court because their wrongful conduct occurred in the State of Missouri.

24.     This Court has subject matter jurisdiction pursuant to diversity jurisdiction, 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between Plaintiffs, which are all either Florida, Texas, California, North

---

[1] Mayflower and United added or deleted Suddath-affiliated agents from time to time and new Agent Agreements were signed with each new Suddath-affiliated agent. The Suddath entities in this lawsuit are the Mayflower and United agents at the time of termination of the agency relationship.

Carolina, Minnesota, Washington, or Oregon entities, and none of which are citizens of the State of Missouri, and Defendants, two Missouri limited liability companies (which are wholly owned), and a Missouri cooperative association, respectively, with the Missouri cooperative association the sole owner and member of the two Missouri limited liability company defendants.

25.    This Court has subject matter jurisdiction pursuant to federal question jurisdiction, 28 U.S.C. § 1331, because most of the causes of action are for declaratory judgment and arise under federal law pursuant to 28 U.S.C. § 2201, which allows "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

26.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to the two remaining causes of action for breach of contract and failure to furnish records because "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

27.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and 1391(c), as well as pursuant to Section 5(N) of that certain Agency Agreement dated January 23, 2015, between Suddath Van Lines and United, and Section 3(i) of the Second Amendment to Agency Agreement and Official Recognition of Strategic Relationship, referenced above.

## **GENERAL ALLEGATIONS**

28.    Suddath Van Lines is a cash on delivery and national account household goods moving and storage business based in Jacksonville, Florida. Suddath Van Lines's founder, Carl Suddath, began operating Suddath Van Lines in 1919. The remaining Suddath entities comprise

cash on delivery and national account household goods moving and storage businesses located across the country.

29.     Mayflower and United are both nationally recognized household goods van lines, owned by UniGroup which, in turn, is owned by Mayflower and United agents. SudCo is the parent company of Suddath and owns membership interests of UniGroup. Defendants Mayflower and United are both subsidiaries of UniGroup.

30.     In 1982, Suddath Van Lines elected to become an agent of United (Suddath's agency relationship with Mayflower was established at a later date), and thus, SudCo, the parent company of Suddath, became an owner of membership interests of UniGroup. On February 24, 2011, Mayflower and Suddath Relocation Systems of Wisconsin, LLC d/b/a Boulevard Moving & Storage entered into an Agency Agreement, and January 23, 2015, Suddath Van Lines and United entered into an Agency Agreement (collectively, the "**Agency Agreement**")[2].

31.     On December 18, 2017, Mayflower and certain since-replaced entities entered into an Amendment to Agency Agreement, and December 18, 2017, Suddath Van Lines, City, Suddath Systems Charlotte, Withers, Suddath Systems Texas, Suddath Systems Oregon, Suddath Systems Atlanta, Suddath Systems Jacksonville, Suddath Systems Orlando, Suddath Systems Minnesota, Suddath Systems Melbourne, Suddath Systems N. California, Suddath Systems California, Suddath Systems St. Petersburg, Suddath Systems Pensacola, Suddath Systems Ft. Lauderdale, and United entered into an Amendment to Agency Agreement (collectively, the "**First Amended Agreement**")[3].

32.     Then, on September 13, 2022, Mayflower and Suddath Systems St. Petersburg, Daryl, Withers, and Suddath Systems Ft. Lauderdale entered into the Second Amendment to

---

[2] A true and correct copy of the Agency Agreement is attached hereto as **Exhibit A**.
[3] A true and correct copy of the First Amended Agreement is attached hereto as **Exhibit B**.

Agency Agreement and Official Recognition of Strategic Relationship, and September 13, 2022, Suddath Systems Charlotte, Suddath Systems Texas, Suddath Systems Minnesota, Suddath Systems N. California, Suddath Systems California, Suddath Systems Atlanta, Suddath Van Lines, Suddath Systems Jacksonville, Suddath Systems Orlando, Suddath Systems St. Petersburg, Suddath Systems Melbourne, City, Withers, Suddath Systems Ft. Lauderdale, Suddath Systems Pensacola, Suddath Systems Oregon, and United entered into the Second Amendment to Agency Agreement and Official Recognition of Strategic Relationship (collectively, the "**Second Amended Agreement**")[4], which is the most recent amendment to the Agency Agreement and is the controlling document for the carrier/agency relationship between Mayflower, Suddath, and Defendants. If the Agency Agreement covers a topic which the Second Amended Agreement does not amend, then the Agency Agreement is controlling for that issue. The First Amended Agreement is not controlling on any issue and has served no purpose since the execution of the Second Amended Agreement.

33.    As an agent of Mayflower and United, Suddath was permitted to transport shipments in interstate commerce using Mayflower and United's operating authority. In addition to its household goods motor carrier authority, Mayflower and United also provided a technology platform through which agents can register shipments and receive distributions of revenue and a variety of other services on behalf of its agents.

34.    Under the Second Amended Agreement, Suddath provided trucks, drivers, and warehouses to Mayflower and United. Additionally, Suddath solicited orders for interstate household good shipments from both cash-on-delivery and national account customers.

---

[4] A true and correct copy of the Second Amended Agreement is attached hereto as **Exhibit C**.

35.     In addition to the Second Amended Agreement, Mayflower and United created a special incentive plan to retain its three largest agents: Suddath, Armstrong Relocation, and Hilldrup Moving & Storage. The Second Amended Agreement provided for the special incentive plan.

36.     All conditions precedent to the bringing of this action have occurred, been satisfied, or been waived.

37.     Plaintiffs have retained the law firm of Terrell Hogan P.A. to represent its interests in this action and have become obligated to pay their reasonable attorneys' fees and costs.

### *For-Cause Termination of the Second Amended Agreement*

38.     During the last approximately ten years, Suddath noticed that Mayflower and United's leadership, by and through UniGroup's management group, was lacking and failing to adapt its governance model based on prior shortcomings. Suddath was vocal about these concerns, including, but not limited to: UniGroup's governance model being broken; UniGroup's general and administrative costs being far too high; UniGroup's technology expenditures being far too high; UniGroup's co-op equity model approved in 2022 being insufficient to address its apparent equity and liquidity issues; the lack of competence of a number of non-Suddath Board members; divergent interests between small agents and large agents of UniGroup; and an obvious lack of alignment between the Board and management of UniGroup with the agency family, including Suddath.

39.     Considering the foregoing concerns, Suddath began to explore many different options, as was its right, including becoming an independent van line or joining various other van lines. Suddath was at all times transparent with Defendants about Suddath's concerns regarding

UniGroup's liquidity issues, management decisions, and overall state of affairs, which had a direct effect on Mayflower and United, as Suddath's carrier.

40.     On multiple occasions, Suddath's Chief Executive Officer, Michael Brannigan ("**Mr. Brannigan**"), voiced his concerns regarding UniGroup's governance and financial decisions with Defendants' Chief Executive Officer, Jason Mills ("**Mr. Mills**"). Notably, in or around August 22, 2021, Mr. Brannigan questioned multiple board members of UniGroup about their financial decision-making at a member meeting. Those same concerns were reiterated by Mr. Brannigan directly to Defendants when UniGroup's management team visited Suddath's offices in May 2022.

41.     Suddath's concerns grew stronger when, in May 2023, UniGroup announced that it had terminated one of its agents and filed suit in federal court for fraud, civil conspiracy, conversion, unjust enrichment, and breach of contract due to a kiting scheme wherein the agent allegedly defrauded UniGroup from approximately $20,000,000 over more than a decade. The litigation is ongoing, and UniGroup has yet to recover the funds. Plaintiffs, among other owners of UniGroup membership interests, believe this fraudulent scheme is another example of UniGroup's gross mismanagement of their own affairs and those of their agents. UniGroup's gross mismanagement directly impacted the leadership and ability of United and Mayflower to serve as the carrier to Suddath.

42.     In or around July 20, 2023, Mr. Mills asked Mr. Brannigan on a conference call whether Mr. Brannigan would be willing to assist UniGroup in a quasi-Board of Director role. Mr. Mills confided that UniGroup was having significant capital challenges and wanted Suddath to participate in discussions about Defendants' future. Mr. Mills requested Mr. Brannigan sign a confidentiality and non-circumvention agreement, represented as something like what Board members typically sign. Mr. Brannigan declined to sign the confidentiality and non-circumvention

agreement and declined the offer to serve in the quasi-Board of Director role. Mr. Brannigan stated that he had a fiduciary duty to Plaintiffs and had to keep Plaintiffs' options open as to their future as an agent of United, and – as to SudCo – owner of membership interests of UniGroup.

43. A few months later, in the fall of 2023, UniGroup advised its owners of membership interests that it had hired a third-party advisory company to assess its options due to its liquidity issues. UniGroup advised that it was considering many options, including a sale of the company. There was a strong concern amongst owners of UniGroup membership interests that UniGroup had insufficient capital to continue operations for much longer.

44. In or around October 18, 2023, Mr. Mills called both Mr. Brannigan, and SudCo's General Counsel, Joanna Aman ("**Ms. Aman**") regarding the quasi-Board of Director role, and the confidentiality and non-circumvention agreement which Mr. Brannigan must sign to accept such a role. Mr. Brannigan reiterated that he would not sign the confidentiality and non-circumvention agreement, and that he had a fiduciary duty to keep Plaintiffs' options open due to Defendants' admitted liquidity concerns and governance issues. Ms. Aman was also requested to sign the confidentiality and non-circumvention agreement but declined for the same reasons as Mr. Brannigan.

45. In or around October 30, 2023, UniGroup's Board of Directors held a Zoom meeting with UniGroup's owners of membership interests, including SudCo, to discuss the recommendations of the third-party advisor to solve UniGroup's liquidity challenges. The advisors set an expectation that the only path forward was the dilution of the existing membership interests owners' equity and, potentially, the sale of the company. Plaintiffs continued to explore many different options, as was their right.

13

46.     After the meeting, Mr. Brannigan and Plaintiffs' concerns regarding UniGroup's ability to resolve its liquidity issues and Defendants' ability to overcome their gross mismanagement were not settled. Rather, Mr. Brannigan left the meeting feeling worse about Defendants' future and, as a result, Suddath's future as an agent of Mayflower and United, and SudCo's future as an owner of UniGroup's membership interests.

47.     In or around November 29, 2023, the Chairperson of UniGroup called Mr. Brannigan to request a meeting. The purpose of the meeting was to provide Plaintiffs with an update on UniGroup's meetings with its financial advisors and to discuss the relationship between Defendants and Suddath. Due to the holidays and inclement weather, the meeting was ultimately scheduled for January 17, 2024.

48.     On January 17, 2024, and while Suddath representatives were physically present in Missouri, Suddath hand-delivered its intent to terminate the Second Amended Agreement. In the spirit of good faith, Suddath brought several of its senior executives to Missouri and invited Mayflower and United to discuss with Suddath an amicable and orderly termination and transition of services. Instead of accepting Suddath's invitation to discuss, Mayflower and United's Chairman of the Board, President, and CEO left the state.

49.     Then, on January 19, 2024, Mayflower and United immediately terminated the Second Amended Agreement. On January 22, 2024, Suddath acknowledged Mayflower and United's termination. Thus, the termination date was January 22, 2024. The Second Amended Agreement specifies the procedure for termination of the Second Amended Agreement by both the "Carrier," which is defined to include Defendants, or the agent, Suddath. The Second Amended Agreement provides for reasons that Suddath may terminate the Agreement "for cause," which is limited to:

(i) [Defendants'] failure to pay credits due under the Retention Credit Program, as applicable, as and when due to [Suddath], which failure is not cured within thirty (30) days following written notice from [Suddath] to [Defendants]; (ii) [Defendants'] material breach of this [Second Amended Agreement] that results in a material adverse financial impact to [Suddath], which failure is not cured within thirty (30) days following written notice from [Suddath] to [Defendants]; and (iii) a substantial change by [Defendants] in the revenue distribution model that results in a material adverse financial effect upon [Suddath], which is not reversed within thirty (30) days following written notice from [Suddath] to [Defendants].

Second Amended Agreement at 1(e).

50.     Suddath did not initially specify its intent to terminate the Second Amended Agreement "for cause." However, Mr. Brannigan, on behalf of Suddath, clearly put Mr. Mills, on behalf of Defendants, on notice of Suddath's concern of UniGroup's liquidity issues and Defendants' gross mismanagement.

51.     UniGroup's gross mismanagement of Defendants led to financial and liquidity issues, and the failure to uncover an agent's fraudulent activity which resulted in an approximately $20,000,000 loss to UniGroup. Mayflower and United, as subsidiaries of UniGroup, experienced financial and liquidity issues because of their parent company's actions. Mayflower and United's gross mismanagement contributed to these financial and liquidity issues. Further, and in an apparent attempt to address Defendants' financial and liquidity issues, time and time again, Defendants made unilateral, material substantial changes to the revenue distribution model, which directly impacted the earnings and revenue that was distributed to Suddath, many of such changes were made without advance notice and implemented in the middle of a calendar year (i.e., after annual financial planning has been completed). For example, Defendants made changes to the revenue distribution model by increasing chargebacks to Suddath by over 1%, which equaled approximately a $1,000,000.00 change to the detriment of Suddath. Mr. Brannigan disputed the changes to the revenue distribution mode. In response, Defendants eliminated some "taxes" but

implemented others such that there continued to be a material, adverse change to the revenue distribution model.

52.     Accordingly, Suddath's notice of intent to terminate the Second Amended Agreement was in fact "for cause" because of Mayflower and United's material breach of the Second Amended Agreement, through their gross mismanagement, that has resulted in a material adverse financial impact to Plaintiffs, among other owners of membership interests of UniGroup.

53.     While the Second Amended Agreement states that Suddath would be required to provide written notice to Mayflower and United with a 30-day opportunity to cure, Suddath alleges that an opportunity to cure would have been futile. Defendants had already acknowledged their gross mismanagement of their finances and liquidity issues, signaling to the owners of membership interests of UniGroup that a sale of the company may be the only way out of the issues it faced. Thus, Suddath providing United with a 30-day opportunity to cure would have undoubtedly been futile and, further, UniGroup's immediate termination of the Second Amended Agreement served as UniGroup's rejection of any opportunity to cure a default under the Second Amended Agreement.

### *Liquidated Damages*

54.     The Second Amended Agreement states, that "[a]ny attempted early termination of the [] Agreement by [Suddath] other than for cause, shall be deemed a material breach by [Suddath], in which event [Suddath] . . . shall pay [Defendants] the liquidated damages amount below." Second Amended Agreement at 1(e) (emphasis added).

55.     If the Court finds that the termination of the Second Amended Agreement was not "for cause," then the liquidated damages provision specifically contemplates the early termination, or rather a notice of early termination, by Suddath. The Second Amended Agreement further states:

[Defendants] and [Suddath] agree that damages to [Defendants] will be difficult to quantify in the event [Suddath] fails to fulfill its multi-year commitment to [Defendants] for the full duration of the Term . . . or if [Defendants] terminate this [Second Amended Agreement] for cause or due to an act of gross misconduct or willful breach by [Suddath]. Such damages to [Defendants] will include loss of revenue and the damage to [Defendants'] reputation, customer relationships, and strategic plans made by [Defendants] premised on the retention of [Suddath] for the full period of the Term. Under these limited circumstances the parties agree that as liquidated damages and not as a penalty, [Suddath] shall be liable to [Defendants] for an amount equal to a multiple of the average annual payment received by [Suddath] under the Large Booker Incentive and Extraordinary Volume Incentive during the LBI Period and/or the Retention Credit Program, as applicable during the Retention Credit Period during the three (3) calendar years prior to the early termination[.]

Second Amended Agreement at 1(f).

56.    When a liquidated damages clause represents a reasonable forecast of harm caused by a breach of contract, and the harm is of the type that is difficult to accurately estimate, courts will enforce the liquidated damages provision. *Mihlfeld & Associates, Inc. v. Bishop & Bishop, L.L.C.*, 295 S.W.3d 163, 172 (Mo. App. 2009). The liquidated damages provision in the Second Amended Agreement is reasonable and was agreed to by both parties, yet Defendants are trying to avoid it for a windfall, as explained more fully below.

57.    As such, the liquidated damages table below governs the amount of liquidated damages Suddath owes Mayflower and United, in total:

| If the termination date is | | Then the multiple is: |
|---|---|---|
| on or after | and on or before | |
| January 1, 2018 | December 31, 2018 | four (4x) |
| January 1, 2019 | December 31, 2019 | three (3x) |
| January 1, 2020 | December 31, 2020 | three (3x) |
| January 1, 2021 | December 31, 2021 | three (3x) |
| January 1, 2022 | December 31, 2022 | three (3x) |
| January 1, 2023 | December 31, 2023 | two (2x) |
| January 1, 2024 | December 31, 2024 | one (1x) |

Second Amended Agreement at (f).

58.    As discussed above, on January 17, 2024, Suddath hand-delivered its notice of intent to terminate the Second Amended Agreement. Then, on January 19, 2024, Mayflower and United immediately terminated the Second Amended Agreement. On January 22, 2024, Suddath acknowledged Mayflower and United's termination. Thus, the termination date was January 22, 2024. According to the table above, Suddath would owe Mayflower and United (combined) a multiple of one (1x) of "the average annual payment received by [Suddath] under the Large Booker Incentive and Extraordinary Volume Incentive during the LBI Period and/or the Retention Credit Program, as applicable during the Retention Credit Period during the three (3) calendar years prior to the early termination[.]"

59.    Suddath and Defendants disagree and have reached an impasse on the components of liquidated damages (the "**Base Liquidated Damages Amount**")[5]. Suddath asserts that, based on a plain reading of the Second Amended Agreement, the Base Liquidated Damages Amount should be comprised of the Large Booker Incentive and Extraordinary Volume Incentives earned in calendar years 2020, 2021, and 2022 and subsequently paid to Suddath in 2021, 2022, and 2023, i.e., the "three (3) calendar years prior to the early termination" (Second Amended Agreement at Section 5(K)(f)), which clearly occurred in 2024. However, Defendants contend that the Base Liquidated Damages Amount should be comprised of the Large Booker Incentive and Extraordinary Volume Incentives, as well as the Booking Bonus and Hauling O/A D/A Bonus, for 2020, 2021, and 2022, with a manufactured termination date in 2023, such that the multiplier of the Base Liquidated Damages Amount should be two (2x). Defendants argue that Suddath

---

[5] Suddath is prepared to deposit as much of the Base Liquidated Damages Amount into the Court's registry as this Court finds appropriate. Suddath has withheld payment of the Base Liquidated Damages Amount because Suddath alleges that it is offset by Retention Credit Program payments, 409 Policy payments, and redemption of common stock it is owed, ultimately resulting in an amount owed to Suddath by Defendants, rather than an amount owed by Suddath to Defendants.

terminated the Second Amended Agreement in 2023 because of Suddath's acknowledgment that it was exploring many different options, as was its right, including becoming an independent van line or joining various other van lines. By Suddath's calculation, its maximum liquidated damages owed is $1,281,783, while Defendants assert that Suddath owes liquidated damages of $3,189,400.00.

60.     Defendants' position clearly fails. First, the Booking Bonus and Hauling O/A D/A Bonus are excluded from the Base Liquidated Damages Amount under the Second Amended Agreement. Second, the Second Amended Agreement clearly outlines the process for terminating the Second Amended Agreement, which requires ten (10) calendar days' prior written notice before terminating the Second Amended Agreement. Additionally, Mayflower and United immediately terminated the Second Amended Agreement with Suddath after Suddath rightfully provided its written notice of its intent to terminate the Second Amended Agreement. If Mayflower and United's position is that Suddath terminated the Second Amended Agreement in 2023, then why would Mayflower and United terminate the Second Amended Agreement on January 22, 2024, in response to Suddath's written notice of its intent to terminate the Second Amended Agreement? Further, Mayflower and United continued to conduct business in the normal course with Suddath up through the termination of the Second Amended Agreement. In fact, at United and Mayflower's request and in the spirit of good faith, Suddath handled hundreds of Mayflower and United shipments through February 29, 2024 in order to avoid service failures for previously booked shipments. Thus, Mayflower and United's actions contradict their current position on the multiplier of the Base Liquidated Damages Amount.

61.    Further, after Mayflower and United immediately terminated the Second Amended Agreement on January 19, 2024, UniGroup sent an internal announcement[6] to its membership interest owners and agency owners, stating that Suddath "abruptly" announced its intent to end their relationship with Defendants (the "**Internal Announcement**"). UniGroup further stated that the termination of the relationship between Mayflower and Suddath, as well as United and Suddath, would be effective **immediately**.

62.    UniGroup continues in the Internal Announcement that Suddath's actions in recent months have constituted a willful violation of the Second Amended Agreement, and as such, Mayflower and United exercised their right to immediately terminate their relationship with Suddath. Notably, even in the Internal Announcement when UniGroup discusses Suddath's actions in recent months, it does not argue that such actions and "willful violation" of the Second Amended Agreement constitute an effective termination in 2023, rather than in 2024. Defendants' argument for an early termination by Suddath in 2023 directly contradicts the language used in this Internal Announcement by UniGroup to its membership interest owners and agency.

63.    Further, under the Agency Agreement, Defendants were required to render a "final accounting and make all adjustments to such balances no later than one hundred and eighty (180) days from the effective date of termination of this Agreement." Agency Agreement at 5(L). The termination of the Second Amended Agreement occurred on January 22, 2024. Accordingly, Defendants were to render a final accounting to Suddath on or before Saturday, July 20, 2024. Mayflower and United, presumably on behalf of themselves and UniGroup, purport to have provided a final accounting by this date, in line with a January 22, 2024 termination date. If the termination was actually in 2023, as Defendants assert, then the final accounting would have been

---

[6] A true and correct copy of the internal announcement is attached hereto as **Exhibit D**.

delivered too late. Based on the timing of the purported final accounting, Defendants appear to acknowledge that the termination occurred in 2024.

64.     The Second Amended Agreement states that both Suddath and Mayflower or United (as appropriate) "shall have the right to offset liquidated damages against any amounts owed to such party by the other party and its affiliates." Second Amended Agreement at 1(f). As such, Suddath may offset the liquidated damages owed to Mayflower and United with the retention credit program, 409 booking incentive, and common stock owed.

### *Retention Credit Program*

65.     Pursuant to the Second Amended Agreement, Mayflower and United provided a retention credit program with respect to domestic interstate household goods shipments commissions distributed to Suddath from an eligible shipment's revenue (the "**Retention Credit Program**"). Second Amended Agreement at 1(c).

66.     The Second Amended Agreement states that "[a]ny attempted early termination of the [Second Amended Agreement] by [Suddath] other than for cause, shall be deemed a material breach by [Suddath], in which event [Suddath] will forfeit the right to any **further** Retention Credit Program **credits**, as applicable, and [Suddath] shall pay [Mayflower and United] the liquidated damages amount below." Second Amended Agreement at 1(e) (emphasis added).

67.     The Second Amended Agreement is clear that after the Second Amended Agreement was terminated, on January 22, 2024, Suddath was no longer entitled to earn any further Retention Credit Program credits. The language clearly contemplates that Suddath was no longer entitled to earn any further credits, not payments. If the Second Amended Agreement meant to limit Suddath from receiving any further Retention Credit Program payments, as Mayflower and United argue, then it could have used such language.

68.     In fact, in the First Amended Agreement, which preceded the Second Amended Agreement, it did use such language. In the First Amended Agreement, it stated that "[a]ny attempted early termination of the [First Amended] Agreement by [Suddath] other than for cause, shall be deemed a material breach by [Suddath], in which event [Suddath] will forfeit the right to any **further** [Retention Credit Program] **payments** and [Suddath] shall pay [Mayflower and United] the liquidated damages amount below." First Amended Agreement at 1(d) (emphasis added).

69.     The First Amended Agreement clearly states that if the First Amended Agreement is terminated, then Suddath is no longer entitled to receive any further Retention Credit Program payments. In the Second Amended Agreement, which came directly after the First Amended Agreement and is controlling, the language was changed from payments to credits, showing the intention to allow Suddath to receive payment for any credits it earned prior to the termination of the Second Amended Agreement. Thus, Suddath is clearly entitled to any Retention Credit Program payment for credits it earned prior to the termination of the Second Amended Agreement, which equates to approximately $2,000,000.00. Further, Suddath has "the right to offset liquidated damages against any amounts owed to [Suddath] by [Mayflower and United] and its affiliates." Second Amended Agreement at 1(f).

### *409 Booking Incentive*

70.     Pursuant to the Renewal of the 409 Military Incentive Program for Calendar Year 2023, UniGroup's Board of Directors approved a 409 policy for the 2023 calendar year (the "**409 Policy**")[7] for all of Mayflower and United's agents. The 409 Policy states that an agent must be in good standing with its applicable van line "through and as of the date of distribution of any

---

[7] A true and correct copy of the 409 Policy is attached hereto as **Exhibit E**.

incentive payment under the Program" for the relevant agent to be eligible to receive the incentive payments. 409 Policy at p.1. Mayflower and United claim that March 12, 2024, is the distribution date of the 409 Policy for the 2023 calendar year.

71.     Defendants argue that a reading of the 409 Policy means that Suddath is not entitled to receive any 409 Policy payments, because the Second Amended Agreement was terminated before the distribution date, March 12, 2024.

72.     Suddath was an agent in good standing for the entire 2023 calendar year, which is the time period when Suddath earned its incentive under the 409 Policy and right to the payments. If this provision is interpreted as Defendants argue it should be, then payment would be arbitrarily based on when Defendants decide to pay an agent for the 409 Policy payments it is owed. This would allow Defendants to delay payment intentionally and terminate agents in the meantime to avoid payment of the 409 Policy. This reading of the provision is illogical, inequitable, and unjust.

73.     The doctrine of unclean hands prevents Defendants from avoiding payment of 409 Policy incentives. Suddath provided notice of its intent to terminate, pursuant to the Second Amended Agreement, rather than immediately terminating the Second Amended Agreement. Thus, Suddath did not put itself in bad standing when it provided notice of its intent to terminate. It was Defendants that terminated Suddath, unilaterally (like the conduct alleged in Paragraph 51 above) timing it in a way that allowed Defendants to avoid paying Suddath for the 409 Policy credits it rightfully earned in the 2023 calendar year.

74.     Further, the Second Amended Agreement's language of how the Retention Credit Program payments should be handled upon termination of the Second Amended Agreement provides insight into the parties' intention towards matters such as this.

75.     Accordingly, Suddath is entitled to any 409 Policy credits it earned in the 2023 calendar year.

### *Redemption of Common Stock or Membership Interests*

76.     Through UniGroup's conversion of shares and SudCo's acquisition of Daryl, SudCo currently owns 349 shares of common stock or membership interests of UniGroup.

77.     Pursuant to the UniGroup, C.A. Board of Directors Redemption Policy (the "**Redemption Policy**")[8], there is a twelve-month waiting period before the redemption of common stock or membership interests can be completed. Redemption Policy at 2(a).

78.     Redemption of common stock or membership interests shall be made at par value (in this case, par value is $9,300 per share), unless otherwise negotiated by SudCo and UniGroup. Redemption Policy at 5.

79.     Accordingly, redemption of SudCo's common stock or membership interests shall commence on January 22, 2025, twelve months after the termination date.

### *Project Artemis Deal*

80.     During 2023, UniGroup was engaged in discussions related to a deal called Project Artemis. When UniGroup's CEO, Mr. Mills, reached out to Suddath's CEO, Mr. Brannigan, as discussed above, Mr. Mills' request for Mr. Brannigan to serve in a quasi-board member role was for advising as to Project Artemis. As such, on October 18, 2023, Mr. Mills presented to both Mr. Brannigan and Ms. Aman a Confidentiality and Exclusive Dealing Agreement for Project Artemis (the "**Artemis NDA**")[9]. Mr. Brannigan and Ms. Aman refused to sign the Artemis NDA, Mr. Brannigan again citing his fiduciary duty to Suddath to continually explore its options as to its future as an agent for Mayflower and United and SudCo as owner of membership interests of

---

[8] A true and correct copy of the Redemption Policy is attached hereto as **Exhibit F**.
[9] A true and correct copy of the Artemis NDA is attached hereto as **Exhibit G**.

UniGroup. Mr. Mills' persistence of Mr. Brannigan and Ms. Aman signing the Artemis NDA was an attempt by UniGroup to amend and rewrite the Second Amended Agreement by removing Suddath's right to terminate the Agency Agreement and by preventing Suddath from exploring its options, and requiring it to provide unwavering loyalty to Defendants, despite Defendants' admitted financial and liquidity issues.

81.     In furtherance of Defendants' attempts at modifying the Second Amended Agreement, only Mayflower and United's two largest agents, Suddath and Armstrong, were asked to review Project Artemis. It was not a requirement for the owners of membership interests of UniGroup and/or agents of Mayflower or United to be involved in the discussion of Project Artemis.

82.     UniGroup claims that the termination of the Second Amended Agreement, initiated by Suddath in 2024, materially and negatively impacted UniGroup's pending deal regarding Project Artemis, and that Defendants would be seeking damages in excess of $35 million from Suddath on account of this failed transaction. Again, Suddath, and specifically, Mr. Brannigan, had no duty to participate in discussions surrounding Project Artemis, and Suddath did not participate nor have knowledge of any details or timing related to Project Artemis. Therefore, Suddath's notice of intent to terminate the Second Amended Agreement, which led to Defendants terminating the Second Amended Agreement, could not have materially or negatively impacted Project Artemis.

83.     Damage, if any, caused to Defendants because of the termination of the Second Amended Agreement, including the impact it had on Project Artemis, is remedied by the liquidated damages provision. The liquidated damages provision of the Second Amended Agreement states:

> [D]amages to [Defendants] will be difficult to quantify in the event [Suddath] fails to fulfill its multi-year commitment to [Defendants] for the full duration of the Term . . . [s]uch damages to [Defendants] will include loss of revenue and the damage to [Defendants'] reputation, customer relationships, and **strategic plans made by**

**[Defendants] premised on the retention of [Suddath] for the full period of the Term**.

Second Amended Agreement at 1(f) (emphasis added). Once again, the liquidated damages provision of the Second Amended Agreement expressly contemplates the scenario which Defendants attempt to obtain a windfall on. Any material and negative impact that the termination of the Second Amended Agreement had on Project Artemis falls under a strategic plan made by Defendants premised on the retention of Suddath for the entire Term of the Second Amended Agreement. Accordingly, Suddath is not responsible or liable for any further damages to Defendants regarding the impact the termination of the Second Amended Agreement had on Project Artemis.

### *Final Accounting*

84.     Under the Agency Agreement, Defendants are required to render a "final accounting and make all adjustments to such balances no later than one hundred and eighty (180) days from the effective date of termination of this Agreement." Agency Agreement at 5(L). Section 1(A) of the Agency Agreement defines "Carrier" as Mayflower and United, as well as their "parent corporation and any corporation or entity which is or may be under the common ownership or control of either of them, including subsidiaries or affiliates or their respective successors and assigns," which includes UniGroup. The Second Amended Agreement does not make any amendments to this language, and as such, the Agency Agreement is controlling for this provision.

85.     The termination of the Second Amended Agreement occurred on January 22, 2024. Accordingly, Defendants were to render a final accounting to Suddath on or before Saturday, July 20, 2024. Mayflower and United, presumably on behalf of themselves and UniGroup, purport to have provided a final accounting by this date; however, it failed to "make all adjustments to" the relevant balances. Specifically, it failed to include the final accounting for SudCo's value of

common stock or membership interests in UniGroup, which will be redeemed when appropriate. Moreover, on August 2, 2024, Suddath received an additional statement which changed the purported amounts owed, meaning that the previously provided "final accounting" was not, in fact, "final," and thus a final accounting has not been timely provided. Thus, the final accounting is incomplete and inadequate. Moreover, Suddath did not have access to the system to receive the final accounting and had to ask Mayflower and United's representatives to send Suddath weekly statements.

### ***Books and Records Request***

86.     On June 20, 2024, Suddath, pursuant to Mo. Rev. Stat. § 351.1033, requested access to the following records kept by UniGroup:

(1) Minutes of all meetings of its members and of its board, a record of all actions taken by the members or the board without a meeting, and a record of all waivers of notices of meetings of the members of the board at any time since January 1, 2023;

(2) UniGroup's current articles and other governing instruments, and all amendments thereto or restatements thereof;

(3) UniGroup's current bylaws or other similar instruments, and all amendments thereto or restatements thereof;

(4) UniGroup's current policy applicable to redemption of Suddath's UniGroup shares;

(5) All interim financial statements prepared for periods ending during the last fiscal year, and all year-end financial statements, if any, prepared for any previous fiscal year ending since January 1, 2023;

(6) Any and all plans or transactions approved by UniGroup's board that may impact the value of Suddath's UniGroup shares; and

(7) Copies of all tax returns filed by the cooperative since January 1, 2023.

87.     On June 25, 2024, UniGroup responded to this request denying access to requests #1, #5, #6, and #7. As to requests #2, #3, and #4, UniGroup offered access to Suddath, which has a Florida headquarters, in-person at UniGroup's Missouri principal place of business, during the national holiday week of Monday, July 1st, 2024. In summation, UniGroup provided Suddath less than one-week notice of a limited time frame it could access documents which UniGroup kept electronically.

88.     On June 27, 2024, Suddath responded to UniGroup, renewing requests #1-7, and demanding the records which are kept electronically be provided as such.

89.     On June 28, 2024, UniGroup sent an electronic copy of its current bylaws and its current policy on the redemption of Suddath's shares of UniGroup's membership interest, satisfying requests #3 and #4. UniGroup did not, and has not, provided access to requests #1, #2, #5, #6, and #7.

90.     On July 3, 2024, Suddath renewed its demand for all requested records, requesting confirmation by July 9, 2024, whether UniGroup would provide electronic copies or access to the remaining requested records, or that UniGroup was refusing to provide copies or access to additional records. UniGroup ignored this demand.

91.     Accordingly, UniGroup has violated Mo. Rev. Stat. § 351.1033. SudCo is a member of UniGroup and provided proper written notice of its request to inspect the above-referenced records. Further, Suddath's request was made in good faith and for a proper cooperative purpose, which was to access the records to review its rights as a current shareholder and member of UniGroup.

## COUNT I – DECLARATORY RELIEF
### AGAINST DEFENDANTS AS TO THE "FOR CAUSE"
### TERMINATION OF THE SECOND AMENDED AGREEMENT

92.     Plaintiffs re-allege and incorporate by reference paragraphs 1-53 as though fully set forth herein.

93.     Plaintiffs and Defendants have a bona fide dispute regarding whether Suddath terminated the Second Amended Agreement "for cause," which this Court can resolve.

94.     Plaintiffs require a declaratory judgment to determine the remaining issues between the parties.

95.     The declaratory judgment sought is not merely a solicitation for legal advice or sheer curiosity amongst the parties involved.

96.     Suddath's termination of the Second Amended Agreement was "for cause" because of Mayflower and United's material breach of the Second Amended Agreement, by and through UniGroup's gross mismanagement, that has resulted in a material adverse financial impact to Suddath and SudCo, among other owners of membership interests in UniGroup.

97.     Mayflower and United's gross mismanagement, by and through UniGroup's leadership group, led to financial and liquidity issues, and the failure to uncover an agent's fraudulent activity which occurred over the course of a decade, resulting in an approximately $20,000,000 loss to UniGroup.

98.     Accordingly, Suddath's notice of intent to terminate the Second Amended Agreement was in fact "for cause," and Suddath does not owe Defendants any liquidated damages.

99.     Suddath need not have provided a 30-day opportunity to cure, as it would have been futile. Mayflower and United had already acknowledged its gross mismanagement, by and through UniGroup, of its finances and liquidity issues, signaling to the owners of membership interests that a sale of the company may be the only way out of the issues it faced.

100.    Pursuant to Rule 57, Fed. R. Civ. P., Plaintiffs request a speedy hearing of this action.

WHEREFORE, Plaintiffs request this Court enter a declaratory judgment against Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A., and in favor of Plaintiffs, that the Second Amended Agreement was terminated "for cause," and that Plaintiffs do not owe Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A. any liquidated damages, award Plaintiffs their reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

<u>**COUNT II – DECLARATORY RELIEF**</u>
**AGAINST DEFENDANTS AS TO THE TERMINATION DATE**
**AND LIQUIDATED DAMAGES MULTIPLIER**

101.    Plaintiffs re-allege and incorporate by reference paragraphs 1-64 as though fully set forth herein.

102.    Plaintiffs and Defendants have a bona fide dispute regarding whether the liquidated damages multiplier is one (1x) or two (2x), which this Court can resolve.

103.    Plaintiffs require a declaratory judgment to determine the remaining issues between the parties.

104.    The declaratory judgment sought is not merely a solicitation for legal advice or sheer curiosity amongst the parties involved.

105.    If this Court does not find that Suddath's termination of the Second Amended Agreement was "for cause," then Defendants are entitled to liquidated damages from Suddath.

106.    On January 17, 2024, pursuant to section 1(e) of the Second Amended Agreement, Suddath sent its notice of intent to terminate the Second Amended Agreement. Then, on January 19, 2024, pursuant to section 1(d) of the Second Amended Agreement, Mayflower and United immediately terminated the Second Amended Agreement. On January 22, 2024, pursuant to

Section 1(g) of the Second Amended Agreement, Suddath acknowledged Mayflower and United's termination. Thus, the termination date was January 22, 2024.

107.    Accordingly, if Suddath owes liquidated damages, Suddath owes Defendants one (1x) multiplier of "the average annual payment received by [Suddath] under the Large Booker Incentive and Extraordinary Volume Incentive during the LBI Period and/or the Retention Credit Program, as applicable during the Retention Credit Period during the three (3) calendar years prior to the early termination[.]" Suddath asserts that, based on a plain reading of the Second Amended Agreement, the Base Liquidated Damages Amount should be comprised of the Large Booker Incentive and Extraordinary Volume Incentives received by Suddath in 2021, 2022, and 2023 (based on the Large Booker Incentive and Extraordinary Volume Incentive during the LBI Period and/or the Retention Credit Program, as applicable during the Retention Credit Period earned in calendar years 2020, 2021 and 2022), i.e, the "three (3) calendar years prior to the early termination" (Second Amended Agreement at Section 5(K)(f)), which termination clearly occurred in 2024.

108.    Pursuant to Rule 57, Fed. R. Civ. P., Plaintiffs request a speedy hearing of this action.

WHEREFORE, Plaintiffs request this Court enter a declaratory judgment against Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A., and in favor of Plaintiffs that if Plaintiffs owe Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A. any liquidated damages, then it shall be a one (1x) multiplier comprised of the Large Booker Incentive and Extraordinary Volume Incentives paid in 2021, 2022, and 2023, award Plaintiffs their reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

## COUNT III – DECLARATORY RELIEF
### AGAINST DEFENDANTS AS TO SUDDATH'S RETENTION CREDIT PROGRAM PAYMENTS

109.    Plaintiffs re-allege and incorporate by reference paragraphs 1-37 and 65-69 as though fully set forth herein.

110.    Plaintiffs and Defendants have a bona fide dispute regarding whether Suddath is entitled to Retention Credit Program payments, which this Court can resolve.

111.    Plaintiffs require a declaratory judgment to determine the remaining issues between the parties.

112.    The declaratory judgment sought is not merely a solicitation for legal advice or sheer curiosity amongst the parties involved.

113.    The Second Amended Agreement is clear that after the Second Amended Agreement was terminated, on January 22, 2024, Suddath was no longer entitled to earn any further Retention Credit Program credits. The language clearly contemplates that Suddath was no longer entitled to any further credits, not payments.

114.    Accordingly, Suddath is clearly entitled to any Retention Credit Program payment for credits it earned prior to the termination of the Second Amended Agreement, which equates to approximately $2,000,000.00.

115.    Pursuant to Rule 57, Fed. R. Civ. P., Plaintiffs request a speedy hearing of this action.

WHEREFORE, Plaintiffs request this Court enter a declaratory judgment against Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A., and in favor of Plaintiffs that Plaintiffs are entitled to any Retention Credit Program payment for credits they earned prior to the termination of the Second Amended Agreement, award Plaintiffs their

reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

## COUNT IV – DECLARATORY RELIEF
### AGAINST DEFENDANTS AS TO SUDDATH'S 409 POLICY CREDIT PAYMENTS

116.    Plaintiffs re-allege and incorporate by reference paragraphs 1-37 and 70-75 as though fully set forth herein.

117.    Plaintiffs and Defendants have a bona fide dispute regarding whether Suddath is entitled to 409 Policy credit payments, which this Court can resolve.

118.    Plaintiffs require a declaratory judgment to determine the remaining issues between the parties.

119.    The declaratory judgment sought is not merely a solicitation for legal advice or sheer curiosity amongst the parties involved.

120.    Suddath was an agent in good standing for the entire 2023 calendar year, which is the time period when Suddath earned its incentive under the 409 Policy and right to the payments.

121.    Accordingly, Suddath is entitled to any 409 Policy credits it earned in the 2023 calendar year, which equates to $422,000.00.

122.    Pursuant to Rule 57, Fed. R. Civ. P., Plaintiffs request a speedy hearing of this action.

WHEREFORE, Plaintiffs request this Court enter a declaratory judgment against Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A., and in favor of Plaintiffs that Plaintiffs are entitled to any 409 Policy credits they earned in the 2023 calendar year, award Plaintiffs their reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

## COUNT V – DECLARATORY RELIEF
### AGAINST DEFENDANT UNIGROUP AS TO SUDCO'S REDEMPTION OF COMMON STOCK OR MEMBERSHIP INTERESTS

123.    SudCo re-alleges and incorporates by reference paragraphs 1-37 and 76-79 as though fully set forth herein.

124.    SudCo and UniGroup have a bona fide dispute regarding the price at which Suddath may redeem its common stock, which this Court can resolve.

125.    SudCo requires a declaratory judgment to determine the remaining issues between the parties.

126.    The declaratory judgment sought is not merely a solicitation for legal advice or sheer curiosity amongst the parties involved.

127.    Pursuant to the Redemption Policy, there is a twelve-month waiting period before the redemption of common stock can be completed. Redemption Policy at 2(a).

128.    Redemption of common stock shall be made at par value, unless otherwise negotiated by SudCo and UniGroup. Redemption Policy at 5.

129.    Accordingly, redemption of SudCo's common stock or membership interests shall commence on January 22, 2025, twelve months after the termination date

130.    SudCo owns 349 shares of membership interest in UniGroup, which at a par value of $9,300 equals a redemption value of $3,245,700.00.

131.    SudCo requests this Court declare the par value of SudCo's stock or membership interests in UniGroup. SudCo needs this information to properly determine the amount Suddath owes Defendants, or Defendants owe Suddath, based on the Court's findings above.

132.    Pursuant to Rule 57, Fed. R. Civ. P., SudCo requests a speedy hearing of this action.

WHEREFORE, SudCo requests this Court enter a declaratory judgment against Defendant, UniGroup, C.A., and in favor of SudCo that SudCo owns 349 shares of membership interests in Defendant, UniGroup, C.A., that SudCo is entitled to redeem its 349 shares of membership interest in UniGroup, C.A. at a par value of $9,300, for a redemption value of $3,245,700.00, award SudCo its reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

**COUNT VI – DECLARATORY RELIEF**
**AGAINST DEFENDANTS AS TO SUDDATH'S LIABILITY FOR ITS IMPACT ON PROJECT ARTEMIS**

133.    Plaintiffs re-allege and incorporate by reference paragraphs 1-37, 54-64, and 80-83 as though fully set forth herein.

134.    Plaintiffs and Defendants have a bona fide dispute regarding whether Plaintiffs have liability for their impact on Project Artemis, which this Court can resolve.

135.    Plaintiffs require a declaratory judgment to determine the remaining issues between the parties.

136.    The declaratory judgment sought is not merely a solicitation for legal advice or sheer curiosity amongst the parties involved.

137.    Plaintiffs, and specifically, Mr. Brannigan, had no duty to participate in discussions surrounding Project Artemis.

138.    Plaintiffs are not responsible for Suddath's notice of intent to terminate the Second Amended Agreement, which led to Mayflower and United terminating the Second Amended Agreement, materially and negatively impacting Project Artemis.

139.    Damage caused, if any, to Defendants because of the termination of the Second Amended Agreement, including the impact it had on Project Artemis, is remedied by the liquidated damages provision.

140.     Accordingly, Plaintiffs are not responsible or liable for any further damages to Defendants regarding the impact the termination of the Second Amended Agreement had on Project Artemis.

141.     Pursuant to Rule 57, Fed. R. Civ. P., Plaintiffs request a speedy hearing of this action.

WHEREFORE, Plaintiffs request this Court enter a declaratory judgment against Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A., and in favor of Plaintiffs that Plaintiffs are not responsible or liable for any damages to Defendants, Mayflower Transit, LLC, United Van Lines, LLC, and UniGroup, C.A., regarding the impact the termination of the Second Amended Agreement had on Project Artemis, award Plaintiffs their reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

### COUNT VII – BREACH OF CONTRACT
**AGAINST DEFENDANTS FOR FAILURE TO RENDER AN
ADEQUATE AND COMPLETE FINAL ACCOUNTING**

142.     Suddath re-alleges and incorporates by reference paragraphs 1-37 and 84-85 as though fully set forth herein.

143.     Under the Agency Agreement, Defendants are required to render a "final accounting and make all adjustments to such balances no later than one hundred and eighty (180) days from the effective date of termination of this Agreement." Agency Agreement at 5(L).

144.     The Second Amended Agreement does not make any amendments to this language, and as such, the Agency Agreement is controlling for this provision.

145.     The termination of the Second Amended Agreement occurred on January 22, 2024. Accordingly, Defendants were to render a final accounting to Suddath on or before Saturday, July 20, 2024. Mayflower and United, presumably on behalf of themself and UniGroup, purport to have

provided a final accounting by this date; however, it failed to "make all adjustments to" the relevant balances. Specifically, it failed to include the final accounting for SudCo's value of common stock in UniGroup, which will be redeemed when appropriate. Moreover, on August 2, 2024, Suddath received an additional statement which changed the purported amounts owed, meaning that the previously provided "final accounting" was not, in fact, "final," and thus a final accounting has not been timely provided. Thus, the final accounting is inadequate and incomplete.

146.   Defendants' breach has damaged, and continues to damage, Suddath because interest is accruing on the liquidated damages it owes Defendants (if any), but it cannot make such payment until an adequate and complete final accounting is provided.

WHEREFORE, Plaintiffs request this Court enter judgment against Defendants, Mayflower Transit, LLC, United Van Lines, LLC and UniGroup, C.A., for all damages incurred by Plaintiffs, including direct and consequential damages, their reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

### COUNT VIII – FAILURE TO FURNISH RECORDS
**AGAINST DEFENDANT UNIGROUP FOR VIOLATION OF MO. REV. STAT. § 351.1033**

147.   Plaintiffs re-allege and incorporate by reference paragraphs 1-37 and 86-91 as though fully set forth herein.

148.   On June 20, 2024, Plaintiffs, pursuant to Mo. Rev. Stat. § 351.1033, requested access to records kept by UniGroup.

149.   UniGroup satisfied two of the seven statutory record requests made by Plaintiffs, but failed to provide the remaining five requests.

150.   Accordingly, UniGroup has violated Mo. Rev. Stat. § 351.1033. SudCo is a member of UniGroup and provided proper written notice of its request to inspect the above-referenced

records. Further, Plaintiffs' request was made in good faith and for a proper cooperative purpose, which was to access the records to review SudCo's rights as an exiting member of UniGroup.

WHEREFORE, Plaintiffs request this Court enter judgment against Defendant, UniGroup, C.A., requiring production of the requested records and for all damages incurred by Plaintiffs, including direct and consequential damages, their reasonable and recoverable costs incurred in connection with this claim, and grant any other such relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury on all issues so triable.

Date: August 2, 2024

Respectfully submitted,

**TERRELL HOGAN P.A.**
*/s/ Aleksas A. Barauskas*
Aleksas A. Barauskas, Esq.
Eastern District of Missouri
Bar Number: 68175FL
233 East Bay Street, 8th Floor
Jacksonville, Florida 32202
(904) 632-2424 (Telephone)
(904) 632-0549 (Facsimile)
barauskas@terrellhogan.com
bedard@terrellhogan.com
aharwood@terrellhogan.com
*Attorney for Plaintiffs*